**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**CHERYL VERGIN,**

            **Plaintiff,**

   **v.**                                               **Case No. 08-C-0283**

**RELIANCE STANDARD LIFE**
**INSURANCE COMPANY,**

            **Defendant.**

---

## DECISION AND ORDER

---

Presently before the Court is Defendant Reliance Standard Life Insurance Company's ("Reliance") motion to dismiss Plaintiff Cheryl Vergin's ("Vergin") state law breach of contract claim against Reliance for the wrongful denial of long-term disability benefits. Because the group disability insurance policy is an "employee welfare benefit plan" as that phrase is defined in the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001-1461 ("ERISA"), the breach of contract claim is preempted and Reliance's motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted.

### BACKGROUND

Vergin commenced this action in the Circuit Court for Winnebago County, Wisconsin on February 25, 2008 (Def.'s Rem. Notice 1), alleging that she had been injured and totally disabled as a result of a car accident and that she was covered by a group long-term

disability insurance policy issued to her employer by Reliance. (Def.'s Rem. Notice Ex. A 3.) She alleged that on October 2, 2006, Reliance denied her appeal from its decision to "terminate" her claim for long-term disability benefits. (*Id*.) In her original state court complaint, Vergin also alleged that her claims were governed by ERISA. (*Id.*)

On April 1, 2008, Reliance removed the case from state court to this Court alleging that it had subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e) and 28 U.S.C. § 1331, as well as § 1332. Nearly six months after removal, on September 30, 2008, Vergin filed a First Amended Complaint ("Amended Complaint") in which she seeks to re-allege by reference every allegation contained in the original state complaint, with the exception of her allegation that her claim for benefits was governed by ERISA. Instead, Vergin's Amended Complaint alleges that ERISA "may not apply" due to the relationship between Reliance, Vergin, and Vergin's former employer and, consequently, alleges an alternative claim for breach of contract under state law. (Am. Compl. ¶ 2.) These alternative allegations are the targets of Reliance's motion to dismiss.

Reliance asserts that "[t]here is no basis for the new allegation that ERISA may not apply to [Vergin's] claim." (Def.'s Mot. Dismiss 1.) In short, Reliance argues that the insurance agreement is an ERISA plan as a matter of law, and that any state law claim that Vergin would have relating to the agreement is preempted by ERISA.

**MOTION TO DISMISS STANDARDS**

A motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the complaint. *See* Fed. R. Civ. P. 12(b)(6). When determining whether

2

a motion to dismiss should be granted, courts are to assume "that all allegations in the complaint are true." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). While detailed factual allegations are not necessary in general, *id.,* the plaintiff must provide "enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through [her] allegations, show that it is plausible, rather than merely speculative, that [she] is entitled to relief." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008) (citation omitted). As a general rule, the only subject of analysis in a Rule 12(b)(6) motion is the plaintiff's complaint. *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002).

Vergin contends that in order to properly dispose of the motion to dismiss, the Court should also consider the content of her affidavit that is attached to her brief in opposition to the motion. Vergin acknowledges that doing so would convert the motion to "one for summary judgment under Rule 56," citing Rule 12(d) of the Federal Rules of Civil Procedure, but states that result "is not the intent or request of the Plaintiff." (Pl.'s Resp. Def.'s Mot. Dismiss 4.) Vergin states that, if the motion is converted to a motion for summary judgment, she requests a continuance under Rule 56(f) of the Federal Rules of Civil Procedure to allow her to take the depositions of her former employer's representative(s) who are best able to address the factual issues.

The decision whether to consider matters outside of the pleadings is a discretionary one. *See Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998); Fed.R.Civ.P. 12(d). Neither Reliance nor Vergin suggest that the matter be resolved on summary judgment

3

at this juncture. Therefore, Reliance's motion to dismiss will be resolved without consideration of Vergin's affidavit.

Reliance included a copy of the group disability insurance policy with its motion to dismiss and urges the Court to consider its provisions. (Mot. Dismiss Ex. A.) The insurance policy under which Vergin was allegedly denied disability benefits need not be excluded even though it too is a document outside of Vergin's Amended Complaint.

Rule 10 (c) of the Federal Rules of Civil Procedure provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.' *Rosenblum*, 299 F.3d at 661 (quoting Fed. R. Civ. P. 10(c)). The case law of this circuit makes clear that this rule extends to "a limited class of attachments to Rule 12(b)(6) motions." *Rosenblum*, 299 F.3d at 661. "Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [her] claim. Such documents may be considered by a district court in ruling on the motion to dismiss." *Id.* (quoting *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994)). Thus, the Court must determine whether the group disability insurance policy is referred to in Vergin's amended complaint and whether the policy is central to her claim.

It is appropriate to note here that Vergin has significantly complicated the Court's task by failing to comply with the Court's local rules regarding amendments of a pleading. Civil Local Rule 15.1 provides that "[a]ny amendment to a pleading, whether filed as a matter of course or upon any motion to amend, must reproduce the entire pleading as amended, and may not incorporate any prior pleading by reference." Compliance with this

4

rule is absolutely critical, as "[o]nce an amended pleading is filed, it supersedes the prior pleading." *Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1057 (7th Cir. 1998). "The prior pleading is in effect withdrawn as to all matters not restated in the amended pleading." *Id.* (quoting *Fuhrer v. Fuhrer*, 292 F.2d 140, 144 (7th Cir. 1961)). Thus, there is no legal significance to paragraph one of Vergin's Amended Complaint, which states that Vergin "[r]e-alleges paragraphs 1, 2, 3, and 5 of the original Complaint." (Am. Compl. ¶ 1.)

The Court nonetheless concludes that the effective allegations in Vergin's Amended Complaint sufficiently refer to the insurance policy and indicate that it is central to her claim. Paragraphs three, four, and five of the Amended Complaint all refer to the disability policy at issue, and paragraphs four and five invite scrutiny of the policy's language both by alleging the existence of ambiguities in the policy provisions and suggesting legal conclusions drawn from the "plain language" of the policy. Furthermore, since breach of contract is the only effective cause of action alleged in Vergin's Amended Complaint, it is clear that the agreement is "central to [the] claim." *Rosenblum*, 299 F.3d at 661.

Thus, in considering whether the group insurance policy is a plan governed by ERISA, the Court will consider the group insurance policy but not Vergin's affidavit.

**ANALYSIS**

The critical issue raised by Reliance's motion is whether the group insurance policy is an "employee welfare benefit plan" governed by ERISA. An "employee welfare

5

benefit plan is defined by the legislation, 29 U.S.C. § 1002(1),[1] and requires the existence of five elements:

> (1) a plan, fund, or program, (2) established or maintained, (3) by an employer or by an employee organization, or by both, (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits, (5) to participants or their beneficiaries.

*Postma v. Paul Revere Life Ins. Co.,* 223 F.3d 533, 537 (7th Cir. 2000) (quoting *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.*, 805 F.2d 732, 738 (7th Cir. 1986)). As in *Postma*, 223 F.3d at 537, the only dispute presented by Reliance's motion is whether Vergin's employer "established or maintained" the plan.

In *Postma*, 223 F.3d at 537, the Seventh Circuit Court of Appeals resolved a similar controversy, on appeal from decision on summary judgment. The court examined both a regulatory "safe harbor" provision that can place some plans outside of ERISA's scope and its prior case law. *Id.*

---

[1] Section 1002(1) of Title 29 of the United States Code provides:

> The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

The "safe harbor" provision states that:

> [T]he terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which
>
> (1) No contributions are made by an employer or employee organization;
>
> (2) Participation in the program is completely voluntary for employees or members;
>
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j).

The court also considered *Brundage-Peterson v. Compcare Health Services Insurance Corp.*, 877 F.2d 509, 511 (7th Cir. 1989), which held that "[a]n employer who creates by contract with an insurance company a group insurance plan and designates which employees are eligible to enroll in it is outside the safe harbor created by the Department of Labor regulation." *Brundage-Peterson* states that even the "rather barebones plan" before it was a "common method by which employers provide health and other welfare benefits to their employees, and not one that has heretofore been thought to take a benefits plan out of ERISA." *Id.*

In this case, the group insurance policy was issued to Vergin's former employer, not to Vergin individually. (Mot. Dismiss, Ex. A 1 [un-numbered]). Furthermore, the policy defined categories of employee eligibility. Specifically, the group insurance policy identified four classes of employees. The distinguishing features between the classes were the employees' schedules (i.e., full-time or part-time), their pay status (i.e., salaried or hourly), and the location of their workplace. (Mot. Dismiss, Ex. A 1.0.) Vergin's former employer also guaranteed 100% participation in the insurance plan for one class of employees, and guaranteed at least 75% participation for the other three classes. (*Id*.) Finally, Vergin's former employer was to have paid all premiums for at least one class of employees under the insurance policy. (*Id*. at 1.2.)

These policy provisions are sufficient to establish that the group disability insurance policy in this case falls within the definition of an "employee welfare benefit plan" and is governed by ERISA. In *Brundage-Peterson*, the court concluded that a medical insurance policy was such a plan where the plaintiff's employer contracted with the insurer to provide coverage for employees, established eligibility requirements for employees, and made contributions toward the employees' insurance premiums. 877 F.2d at 510-11. These aspects of the policy at issue in *Brundage-Peterson* are also present in this case. There is value in noting that Vergin's disability policy goes one step further than the *Brundage-Peterson* policy by making participation for one employee class involuntary; this provision alone is sufficient to bring the policy outside of the Department of Labor's safe harbor provision. *See* 29 C.F.R. § 2510.3-1(j)(2) (requiring "completely voluntary" participation in the program for

employees or members). Thus, the disability insurance policy is one in which Vergin's former employer was sufficiently involved to label it an "employee welfare benefit plan" within the meaning of ERISA.

*Grimo v. Blue Cross/Blue Shield, of Vt.*, 34 F.3d 148, 150 (2d Cir. 1994), cited by Vergin, is distinguishable. That action presented the issue of whether the plaintiff's policy with the insurer was an ERISA plan, in the context of an appeal from the denial of a motion to remand the matter to state court and summary judgment dismissing the action. *Id.* The issue turned on the structure and funding of the program under which the policy was offered and the record in that regard was "sparse," consisting almost entirely of an informal admission that at least for the "principals" of the employer corporation, the employer had paid 50% of the cost of the health insurance for a period of a year or two ending roughly a year before the hearing. *Id.* The plaintiff's counsel further stated that he "believe[d]" that the employer, again at least for its principals, had paid 100% of the costs of the insurance in the first year it was offered. *Id.* He also appeared to claim, however, that at the time of the hearing, all employees of the corporation were paying the full costs of their insurance. *Id.*

The appellate court held that it could not determine whether the plaintiff's policy was excluded from the definition of an ERISA plan under 29 C.F.R. § 2510.3-1(j) because of the sparse record, noting that the district court made no statement of pertinent undisputed facts and had not stated its reasons for concluding an ERISA plan existed. *Id.* at 152. The court vacated the judgment and remanded the matter for further proceedings, emphasizing that it held "only that any employer contribution made in the past, no matter how long ago or under

what circumstances, does not preclude application of 29 C.F.R. § 2510.3-(j)(1) or demonstrate that an employer has 'established or maintained' the plan under 29 U.S.C. § 1002(1)." *Id.* at 153.

In this case, the "record" includes the disability insurance policy, which satisfies multiple criteria of ERISA and indicates that it falls outside the safe harbor provision. Despite construing the allegations of the Amended Complaint in the light most favorable to Vergin, her vague allegation that ERISA may not apply to the insurance policy due to the relationship between Reliance, Vergin, and her former employer does not allege sufficient facts to show that her claim that ERISA may not apply to the disability insurance policy at issue is plausible.

The practical effect of this conclusion is that Vergin's alternative claim, based upon state contract law, is dismissed. Section 1144(a) of Title 29 of the United States Code states that "[e]xcept as provided in [the "savings clause"] of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." The Court need not delve into the question of whether a breach of contract action "relate[s] to" an employee benefit plan; the Seventh Circuit Court of Appeals has concluded that ERISA preempts state breach of contract actions. *Marciosek v. Blue Cross & Blue Shield United of Wis.*, 930 F.2d 536, 540 (7th Cir. 1991); *Tomczyk v. Blue Cross & Blue Shield United of Wis.*, 951 F.2d 771, 776 (7th Cir. 1991). Therefore, Vergin's alternative state law claim for breach of contract must be dismissed as

preempted because the group insurance plan at issue is an "employee welfare benefit plan" governed by ERISA.

The dismissal of Vergin's alternative state law breach of contract claim creates a problem in this litigation since no claims are presently before the Court. Because "[t]he amended complaint became, upon its submission, the operative complaint in the case[, and] the original filing no longer control[s] the litigation," Vergin's attempt to incorporate by reference allegations from her original state law complaint is ineffective. *See Duda*, 133 F.3d at 1057. Vergin's only other allegations have been dismissed. Although it would be within the Court's discretion to strictly enforce the local rules, *Tobel v. City of Hammond*, 94 F.3d 360, 362-63 (7th Cir. 1996), Reliance has not moved for dismissal of the action, and discovery in this case is nearing completion. For these reasons, the Court will allow Vergin to file an amended complaint that complies with the Eastern District of Wisconsin's Local Rules and reflects this Court's Decision and Order. If Vergin does not file an amended complaint by March 30, 2009, this action will be dismissed.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

1. Reliance's motion to dismiss (Docket No. 18) is **GRANTED** with respect to the allegations contained in paragraphs two, three, four, and five of Vergin's First Amended Complaint;

2. Vergin **MAY** file an amended complaint that complies with the Local Rules for the Eastern District of Wisconsin and reflects this Court's Decision and Order **by March 30, 2009**; and,

3. If Vergin does not file an amended complaint by March 30, 2009, this action will be dismissed.

Dated at Milwaukee, Wisconsin this 17th day of March, 2009.

                                      **BY THE COURT**

                                      *s/ Rudolph T. Randa*
                                      **Hon. Rudolph T. Randa**
                                      **Chief Judge**